UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                    Plaintiff,<br><br>v.<br><br>VACATION PROPERTY SERVICES, INC.,<br>et al.,<br><br>                    Defendants. | Case 8:11-cv-00595-JDW-MAP |

## STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AS TO DEFENDANT DAVID S. TAYLOR

On March 22, 2011, Plaintiff, the Federal Trade Commission ("FTC"), filed its

Complaint for permanent injunction and other relief pursuant to Sections 13(b) and 19 of the

Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing

and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101 –

6108 [Dkt. 1], charging Defendants Vacation Property Services, Inc., Higher Level Marketing,

Inc., Vacation Property Sellers, Inc., Albert M. Wilson, David S. Taylor, and Frank M. Perry, Jr.

with violating Section 5 of the FTC Act, 15 U.S.C. § 45, and the FTC's Telemarketing Sales

Rule ("TSR"), 16 C.F.R. Part 310.  Plaintiff FTC and Defendant David S. Taylor have agreed to

the entry of this Stipulated Final Judgment and Order for Permanent Injunction ("Order") by this

Court to resolve all matters of dispute between them in this action.

NOW, THEREFORE, Plaintiff FTC and Defendant Taylor having filed a joint motion

requesting the Court to enter this Order,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

# FINDINGS

1. This Court has jurisdiction over the subject matter and the parties.

2. Venue is proper as to all parties in the Middle District of Florida.

3. The activities of Taylor and Vacation Property Services, Inc. were in or affecting commerce, as defined in the FTC Act, 15 U.S.C. § 44.

4. Defendant Taylor, prior to January 2008, and Vacation Property Services, Inc. were telemarketers and/or sellers for the purposes of the TSR.

5. The FTC's Complaint states a claim upon which relief may be granted against Defendant Taylor under Sections 5(a)(1), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(a)(1), 53(b), and 57b; and under the TSR, 16 C.F.R. Part 310.

6. Taylor has waived any and all rights that may arise under the Equal Access to Justice Act, 28 U.S.C. § 2412, *amended by* Pub. L. 104-121, 110 Stat. 847, 863-64 (1996), pertaining to any claim by the FTC arising out of this case.

7. This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law.

8. The FTC and Taylor waive all rights to seek appellate review or otherwise challenge or contest the validity of this Order.  Taylor further waives and releases any claim he may have against the FTC, its employees, agents, and representatives arising out of this action and under the terms of this Order.

9. Taylor waives his share of any and all claims to the Assets of Vacation Property Services, Inc., Higher Level Marketing, Inc. and Vacation Property Sellers, Inc., including any Assets currently in possession of the Receiver appointed by the Court in this matter, Mark

Bernet, Esq., and further stipulates that his share, if any, of any of these Assets are to be transferred to the FTC to be used for equitable relief, as described in Section V (Equitable Monetary Relief), subject to the terms of the Order Modifying Asset Freeze of Vacation Property Services, Inc. to Pay Attorney's Fees and Costs (D.E. 72).

10.    Taylor has entered into this Order freely and without coercion. Taylor further acknowledges that he has read the provisions of this Order and is prepared to abide by them.

11.    Entry of this Order is in the public interest.

12.    This Order is for settlement purposes only, and does not constitute and shall not be interpreted to constitute an admission by Taylor or a finding that the law has been violated as alleged in the Complaint, or that the facts alleged in the Complaint, other than jurisdictional facts, are true.

## DEFINITIONS

Each of the terms defined below refer to either the singular or plural, as appropriate to the context in which they appear.

1.    **"Asset"** means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), insurance policies, lines of credit, cash, trusts (including but not limited to Asset protection trusts), lists of consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of VPS or Taylor,

including, but not limited to, such reserve funds held by payment processors, credit card processors, banks or other financial institutions.

2.      **"Assisting Others"** includes providing any of the following goods or services to another entity: (i) performing customer service functions, including, but not limited to, charging consumers for products or services, or receiving or responding to consumer complaints; (ii) formulating or providing, or arranging for the formulation or provision of, any sales script or other marketing material; (iii) providing names of, or assisting in the generation of, potential customers; (iv) performing or providing marketing or billing services of any kind; (v) processing credit and debit card payments; or (vi) acting as an officer or director of a business, corporation or other entity.

3.      **"Document"** is synonymous in meaning and equal in scope to the usage of the term in the Federal Rules of Civil Procedure 34(a), and includes writing, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence (including email, instant messages, text messages and other correspondence transmitted on cell phones, smart phones and other mobile devices), photographs, audio and video recordings, contracts, accounting data, advertisements (including, but not limited to, advertisements placed on the World Wide Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, World Wide Web pages, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records and files, mobile electronic records and files, and other data compilations from which information can be obtained and translated, if necessary, through

detection devices into reasonably usable form.  A draft or non-identical copy is a separate

Document within the meaning of the term.

4.    **"Person"** means a natural person, an organization or other legal entity, including

a corporation, partnership, sole proprietorship, limited liability company, association,

cooperative, or any other group or combination acting as an entity.

5.    **"Receiver"** means the receiver appointed in this matter by the Court and any

deputy receivers that shall be named by the receiver.

6.    **"Representative"** means a successor, assign, officer, agent, servant, employee, or

attorney of Taylor, and any Person or entity in active concert or participation with them who

receives actual notice of this Order by personal service or otherwise.

7.    **"Telemarketing"** means any plan, program, or campaign (whether or not covered

by the TSR) that is conducted to induce the purchase of goods or services or a charitable

contribution by use of one or more telephones.  Provided, however, that "Telemarketing" does

not include any plan, program, or campaign that involves only telephone calls made to, or

received from, a business for the purpose of inducing or inquiring about the purchase of goods or

services by the business or a charitable contribution by the business.  Provided further that

"Telemarketing" does include such calls made for the purpose of inducing the retail sale of

nondurable office or cleaning supplies.

8.    **"Timeshare"** means any right of ownership or occupancy in any leisure or

vacation property or properties (including, but not limited to, condominiums, resorts,

campgrounds and cruise ships) that provides rights-holders with periodic usage and/or

occupancy rights.  The term shall also include "points-based" programs that provide similar
ownership and/or occupancy benefits.

9.      "VPS" means Vacation Property Services, Inc. and its successors, assigns,
affiliates or subsidiaries, as well as any fictitious business entities or business names created or
used by any of the entities included in this definition.

## I.

## BAN ON TELEMARKETING

Taylor, whether acting directly or through any Person or Representative, is permanently
restrained and enjoined from engaging or participating in Telemarketing, or Assisting Others
who are engaging or participating in Telemarketing.

## II.

## BAN ON TIMESHARE RESALE AND RENTAL PRODUCTS AND SERVICES

Taylor, whether acting directly or through any Person or Representative, is permanently
restrained and enjoined from (i) advertising, marketing, promoting, offering for sale, or selling
any Timeshare resale or rental products or services; and (ii) Assisting Others with advertising,
marketing, promoting, offering for sale, or selling any Timeshare resale or rental products or
services.

## III.

## BAN ON THE USE OF CONSUMER INFORMATION

Taylor, whether acting directly or through any Person or Representative, is permanently
restrained and enjoined from disclosing, using, or benefitting from customer information,
including the name, address, telephone number, email address, social security number, other

identifying information, or any data that enables access to a customer's account – including a

credit card, bank account, or other financial account – of any Person that was obtained by VPS in

connection with the sale of any product or service during the period from January 1, 2006,

through the date of entry of this Order.  Taylor must dispose of such customer information, if

any, in all forms in his possession, custody, or control within thirty (30) days after entry of this

Order.  Disposal shall be by means that protect against unauthorized access to the customer

information, such as by burning, pulverizing, or shredding any papers, and by erasing or

destroying any electronic media, to ensure that the customer information cannot practicably be

read or reconstructed.  ***Provided, however,*** that customer information need not be disposed of,

and may be disclosed, to the extent requested by a government agency or required by a law,

regulation, or court order.

## IV.

## PROHIBITION AGAINST MISREPRESENTATIONS

In connection with the sale or selling of any goods or services, Taylor and his

Representatives are hereby permanently restrained and enjoined from:

A.      Misrepresenting, directly or by implication, orally or in writing, to any potential

purchaser of any goods or services, any material fact, including, but not limited to:

1.      the total cost to purchase, receive, or use, and the quantity of, any goods or

services that are subject to the sales offer;

2.      any material restrictions, limitations, or conditions to purchase, receive, or

use the goods or services;

3       any material aspect of the nature or terms of a refund, cancellation,

exchange, or repurchase policy for the goods or services; or

4.      the income, profits, or sales volume likely to be achieved from the goods

or services.

B.      Providing substantial assistance to any third party to make any material

misrepresentation, including, but not limited to, those misrepresentations prohibited by

this Section.

### V.

### EQUITABLE MONETARY RELIEF

**IT IS FURTHER ORDERED** that monetary judgment is entered in favor of the FTC

and against Taylor in the amount of three million, seven hundred twenty eight thousand, four

hundred forty five dollars and six cents ($3,728,445.06); ***provided, however,*** that based on the

sworn representations in Taylor's Individual Financial Statements (dated March 30, April 6,

April 12, August 30, 2011, November 29, 2011 and December 7, 2012 [sic] (bearing fax stamp

date December 6, 2011)), the representations in Taylor's Family Law Financial Affidavit (Short

Form) faxed by Taylor to the FTC on January 15, 2012, and the sworn testimony that Taylor

provided at his May 26, 2011 Asset deposition and October 3, 2011 deposition, full payment of

the foregoing amount shall be suspended subject to the conditions set forth in Section VI (Right

to Reopen). Taylor agrees that the facts as alleged in the Complaint filed in this action shall be

taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued

by the FTC to enforce its rights to any payment or money judgment pursuant to this Order,

including, but not limited to, a nondischargeability complaint in any bankruptcy case. Taylor

further stipulates and agree that the facts alleged in the Complaint establish all elements

necessary to sustain an action pursuant to, and that this Order shall have, collateral estoppel

effect for purposes of, Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A).

## VI.

### RIGHT TO REOPEN

A.     The FTC's agreement to this Order is expressly premised upon the truthfulness,

accuracy, and completeness of Taylor's sworn financial statements, Asset deposition

testimony, and other financial Documents that Taylor submitted to the FTC, as well as all

subsequent addenda thereto, all of which Taylor asserts are truthful, accurate, and

complete at the time they were submitted.

B.     If, upon motion by the FTC, this Court, after Taylor has had the opportunity to

refute any allegations or evidence submitted by the FTC regarding any alleged

nondisclosure or material misstatement, finds that Taylor has failed to disclose any

material Asset or materially misstated the value of any Asset in the financial statements

or related Documents described above, or have made any other material misstatement or

omission in the financial statements or related Documents and deposition testimony

described in Sections V (Equitable Monetary Relief) and VI (Right to Reopen) of this

Order, then this Order shall be reopened and suspension of the judgment shall be lifted

for the purpose of requiring payment of monetary relief in the amount of three million,

seven hundred twenty eight thousand, four hundred forty five dollars and six cents

($3,728,445.06), less the sum of any amounts paid to the FTC pursuant to Section V

(Equitable Monetary Relief) and any other payments made by other defendants in this

litigation. *Provided, however,* that in all other respects this Order shall remain in full force and effect, unless otherwise ordered by the Court.

C.     Upon any reinstatement of the monetary judgment, the Court shall make an express determination that the monetary judgment shall be immediately due and payable as to Taylor. The FTC shall be entitled to interest on the judgment, computed from the day of entry of this Order, at the rate prescribed by 18 U.S.C. § 1961, as amended, on any outstanding amounts not paid. The FTC shall be permitted to execute on the judgment immediately after the suspension is lifted and engage in discovery in aid of execution.

D.     Proceedings initiated under this provision would be in addition to, and not in lieu of, any other civil or criminal remedies as may be provided by law, including any proceedings that the FTC may initiate to enforce this Order. For purposes of this Section, Taylor waives the right to contest any of the allegations in the Complaint.

## VII.

### COOPERATION WITH FTC COUNSEL

**IT IS FURTHER ORDERED** that Taylor shall, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the FTC's Complaint, cooperate in good faith with the FTC and appear at such places and times as the FTC shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of Documents, and for such other matters as may be reasonably requested by the FTC, notwithstanding his right to have counsel present and his right to invoke any applicable statutory and/or state or federal Constitutional rights and/or privileges. If requested in writing by the FTC, Taylor shall appear and provide truthful testimony in any

trial, deposition, or other proceeding related to or associated with the transactions or the

occurrences that are the subject of the Complaint, without the service of a subpoena, subject to

his right to have counsel present at any trial, deposition or other proceeding and the ability to

raise any applicable statutory and/or state or federal Constitutional rights and/or privileges.

## VIII.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of (i) monitoring and investigating

compliance with any provision of this Order, and (ii) investigating the accuracy of Taylor's

financial representations upon which the FTC's agreement to this Order is expressly premised:

A.     Within ten (10) days of receipt of written notice from a representative of the FTC,

Taylor shall submit additional written reports, which are true and accurate and sworn to

under penalty of perjury; produce Documents for inspection and copying; appear for

deposition; and provide entry during normal business hours to any business location in

Taylor's possession or direct or indirect control to inspect the business operation.

B.     In addition, the FTC is authorized to use all other lawful means, including but not

limited to:

1.     obtaining discovery from any person, without further leave of court, using

the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69; and

2.     having its representatives pose as consumers and suppliers to any entity

managed or controlled in whole or in part by Taylor, without the necessity of

identification or prior notice.

C.     Taylor shall permit representatives of the FTC to interview any employer,

consultant, independent contractor, representative, agent, or employee who has agreed to

such an interview, relating in any way to any conduct subject to this Order. The person

interviewed may have counsel present.

*Provided however,* that nothing in this Order shall limit the FTC's lawful use of compulsory

process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any

documentary material, tangible things, testimony, or information relevant to unfair or deceptive

acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

### IX.

### <u>COMPLIANCE REPORTING</u>

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this

Order may be monitored:

A.     For a period of three (3) years from the date of entry of this Order,

1.     Taylor shall notify the FTC of the following:

a)     Any changes in his residence, mailing addresses, and telephone

numbers, within ten (10) days of the date of such change.

b)     Any changes in his employment status (including self-

employment), and any change in his ownership in any business

entity within ten (10) days of the date of such change. Such notice

shall include (i) the name and address of each business that he is

affiliated with, employed by, creates or forms, or performs services

for; (ii) a detailed description of the nature of the business; and (iii)

a detailed description of his duties and responsibilities in

connection with the business or employment.

c)   Any changes in his name or use of any aliases or fictitious names within ten (10) days of the date of such change.

2.   Taylor shall notify the FTC of any changes in structure of any business entity that he directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to (i) incorporation or other organization; (ii) a dissolution, assignment, sale, merger, or other action; (iii) the creation or dissolution of a subsidiary, parent, or affiliate; or (iv) a change in the business name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any such change in the business entity about which Taylor learns less than thirty (30) days prior to the date such action is to take place, Taylor shall notify the FTC as soon as is practicable after obtaining such knowledge and *provided, however,* that the reporting obligations imposed by this paragraph (Section IX(B)) do not apply to changes in the business of Shenaniganz, Inc. ("Shenaniganz"), the restaurant that Taylor owns and operates in Apollo Beach, Florida, or any other bar or restaurant that Taylor owns or operates after the entry of this Order, so long as the restaurant or bar operates only as a restaurant or bar.

B.   One hundred eighty (180) days after the date of entry of this Order and annually thereafter for a period of three (3) years, Taylor shall provide a written report to the FTC, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which he complied and is complying with this Order.  This report

shall include, but not be limited to,

    1.    Taylor's then-current residential address, mailing addresses, and telephone numbers;

    2.    Taylor's then-current employment status (including self-employment), including the name, addresses, and telephone numbers of each business that Taylor is affiliated with, employed by, or performs services for; a detailed description of the nature of the business; and a detailed description of Taylor's duties and responsibilities in connection with the business or employment;

    3.    any other changes required to be reported under Subsection A of this Section; and

    4.    a copy of each acknowledgment of receipt of this Order, obtained pursuant to Section XI (Distribution of Order).

C.    Taylor shall notify the FTC of the filing of a bankruptcy petition by him within fifteen (15) days of filing.

D.    For the purposes of this Order, Taylor shall, unless otherwise directed by the FTC's authorized representatives, send by overnight courier all reports and notifications required by this Order to the FTC, to the following address:

    Associate Director for Enforcement
    Bureau of Consumer Protection
    Federal Trade Commission
    600 Pennsylvania Avenue, N.W.
    Washington, D.C. 20580

    RE:    *FTC v. Vacation Property Services, Inc. et al., No. 8:11-cv-595-T-27*

*Provided* that, in lieu of overnight courier, Taylor may send such reports or notifications by first-class mail, but only if Taylor contemporaneously sends an electronic version of such report or

notification to the FTC at: DEBrief@ftc.gov.

## X.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that, for a period of six (6) years from the date of entry of

this Order, Taylor – for any business for which he is the majority owner or directly or indirectly

controls – is hereby restrained and enjoined from failing to create and retain the following

records:

A.     Accounting records that reflect the cost of goods or services sold, revenues

generated, and the disbursement of such revenues;

B.     Personnel records accurately reflecting:  the name, address, and telephone number

of each person employed in any capacity by such business, including as an independent

contractor; that person's job title or position; the date upon which the person commenced

work; and the date and reason for the person's termination, if applicable;

C.     Customer files containing the names, addresses, phone numbers, dollar amounts

paid, quantity of items or services purchased, and description of items or services

purchased, to the extent such information is obtained in the ordinary course of business;

D.     Complaints and refund requests (whether received directly or indirectly, such as

through a third party,) and any responses to those complaints or requests;

E.     Copies of all sales scripts, training materials, advertisements, or other marketing

materials; and

F.     All records and Documents necessary to demonstrate full compliance with each

provision of this Order, including but not limited to, copies of acknowledgments of

receipt of this Order required by the Section XI (Distribution of Order) and XII

(Acknowledgment of Receipt of Order) and all reports submitted to the FTC pursuant to

the Section IX (Compliance Reporting).

*Provided, however,* that the recordkeeping obligations imposed by this Section X do not

apply to Shenaniganz, or any other bar or restaurant that Taylor owns or operates after the entry

of this Order, so long as the restaurant or bar operates only as a restaurant or bar.

## XI.

## DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that, for a period of three (3) years from the date of entry

of this Order, Taylor shall deliver copies of the Order as directed below:

A.      Taylor as control person:  For any business that Taylor controls, directly or

indirectly, or in which Taylor has a majority ownership interest, he must deliver a copy of

this Order to (1) all principals, officers, directors, and managers of that business; (2) all

employees, agents, and representatives of that business who engage in conduct related to

the subject matter of the Order; and (3) any business entity resulting from any change in

structure set forth in Subsection A.2 of Section IX (Compliance Reporting).  For current

personnel, delivery shall be within five (5) days of entry of this Order.  For new

personnel, delivery shall occur prior to them assuming their responsibilities.  For any

business entity resulting from any change in structure set forth Subsection A.2 of Section

IX, delivery shall be at least ten (10) days prior to the change in structure.

B.      Taylor must secure a signed and dated statement acknowledging receipt of the

Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order

pursuant to this Section.

*Provided, however,* that the distribution obligations imposed by this Section XI do not apply to Shenaniganz, or any other bar or restaurant that Taylor owns or operates after the entry of this Order, so long as the restaurant or bar operates only as a restaurant or bar.

## XII.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER

**IT IS FURTHER ORDERED** that Taylor, within five (5) business days of receipt of this Order as entered by the Court, must submit to the FTC a truthful sworn statement acknowledging receipt of this Order.

## XIII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

FOR DEFENDANT TAYLOR:

David S. Taylor

FOR THE FEDERAL TRADE COMMISSION:

William T. Maxson, Esq.
Dotan Weinman, Esq.
Federal Trade Commission
600 Pennsylvania Avenue, NW, H-286
600 Pennsylvania Avenue, NW, H-286
Washington, DC 20580
Telephone:  (202) 326-2635 (Maxson)
            (202) 326-3049 (Weinman)
Facsimile:  (202) 326-3395
E-Mail:  wmaxson@ftc.gov
         dweinman@ftc.gov

DONE AND ORDERED, this __15th__ day of __March__, 2012.

JUDGE JAMES D. WHITTEMORE
United States District Judge

Page 18 of 18