# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff

vs.                                      Case No.: 8:11-cv-00595-JDW-MAP

VACATION PROPERTY SERVICES, et al.,

    Defendants.

_____/

## ORDER

Before the Court are the FTC's motions for default judgment against Vacation Property Services, Inc. (Dkt. 122) and for summary judgment against Albert M. Wilson (Dkt. 114). Upon consideration, the motions are GRANTED *in part*.

### Background

Between 2006 and 2011, Defendants marketed and sold timeshare advertising services to consumers through telephone solicitations. During the calls, Defendants informed consumers that they: (1) had located a buyer or would quickly sell the consumer's timeshare, and (2) would refund their fee if the timeshare did not sell or if the consumer requested rescission within seven days. Several consumers filed complaints with the Better Business Bureau, averring that these representations were false or misleading and that Defendants refused to refund the fee. Further, many of the consumers Defendants contacted were listed on the National Do Not Call Registry.

The FTC filed a four count complaint, alleging that Defendants violated the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a), and Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, by making false or misleading representations, by initiating calls to persons on the National Do Not Call Registry, and by failing to pay the annual fee to access the Do Not Call Registry. Defendants David Taylor, Frank Perry, Jr., Vacation Property Sellers, Inc. d/b/a Timeshare Experts

("TE"), and Higher Level Marketing, Inc. d/b/a Vacation Property Services ("HLM") entered into consent judgments. The only remaining Defendants are Vacation Property Services, Inc. ("VPS"), and its president and sole shareholder, Albert M. Wilson.

The FTC has moved for default judgment against VPS and for summary judgment against Wilson. Wilson filed a response to the summary judgment motion (Dkt. 130),[1] along with supporting evidence. Because the FTC filed declarations of several new witnesses, Wilson was given six weeks to take further discovery and file a supplemental response. Wilson did not file any additional memoranda or evidence, and the motions are ripe for consideration.

### Standard

By the entry of default, VPS is deemed to have admitted the well-pleaded allegations in the complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). The Court has discretion to enter a default judgment under Fed. R. Civ. P. 55(b)(2) if there is "a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] However, a default judgment cannot be entered if it would be inconsistent with a judgment against a defendant who has defended the action. *See Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984).

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. Northern*

---

[1] Wilson is *pro se* but noted that his response was "[p]repared with the assistance of counsel." (Dkt. 130 at 24).

[2] The Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to September 30, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

*Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, "the evidence of the non-movant is to be believed." *Hickson*, 357 F.3d at 1260 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). All factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.* In resolving a motion for summary judgment, "the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Morrison*, 323 F.3d at 924.

## Discussion

The FTC alleges that Wilson is individually liable for VPS' violations of the FTCA and TSR and, further, for the violations of TE and HLM because the companies operated as a common enterprise. Individuals can be held liable for corporate practices that violate the FTCA and TSR, but only if the FTC has first established the corporation's liability. *See F.T.C. v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989); *F.T.C. v. USA Fin., LLC*, 415 F. App'x 970, 974 n.3 (11th Cir. 2011). Wilson argues, first, that VPS did not violate the FTCA or TSR, second, that he is not individually liable for VPS' violations, and third, that there are disputed facts as to whether the companies operated as a common enterprise. His arguments will be addressed in turn.

### Underlying Liability of VPS

In Count I, the FTC alleges violations of Section 5 of the FTCA, which provides that "unfair or deceptive acts or practices in or affecting commerce" are unlawful. 15 U.S.C. § 45(a)(1). "To establish liability under section 5 of the FTCA, the FTC must establish that (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th

Cir. 2003).

"In determining whether a representation is likely to mislead consumers acting reasonably, courts consider the net impression created." *F.T.C. v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1329 (M.D. Fla. 2010). "A representation is material if it is of a kind usually relied upon by a reasonably prudent person." *Id.* "Express claims, or deliberately made implied claims, used to induce the purchase of a particular product or service are presumed to be material." *Id.* (quotation omitted).

Based on the consumer declarations (Plaintiff's Exhibits 7, 16, 18, 19, 110-137) and the declarations and testimony of former VPS employees (Plaintiff's Exhibits 139, 150), the FTC has demonstrated that VPS made numerous material representations which were likely to mislead consumers acting reasonably under the circumstances.[3] Specifically, the telemarketers represented that VPS already had a buyer or renter for the consumer's timeshare,[4] that VPS would sell or rent the timeshare quickly or within a specific time frame,[5] that VPS' fee would be refunded to the consumer at closing,[6] that VPS' fee would be refunded if the timeshare did not sell within the

---

[3] Wilson's argument that the consumer declarations constitute inadmissible hearsay is rejected. At the summary judgment stage, declarations must simply "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Therefore, to avoid summary judgment, Wilson had to show that the averments "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The facts in the declarations clearly could be provided in the form of admissible testimony. Wilson's reliance on *F.T.C. v. U.S. Mortgage Funding, Inc.*, No. 11–CV–80155, 2011 WL 2784466 (S.D. Fla. July 21, 2011) is misplaced, as the issue before the court was whether the declarations would be admissible at trial.

[4] Pl.'s Ex. 7, Skiba Dec. ¶ 6; Pl.'s Ex. 16, Gardner Dec. ¶ 8; Pl.'s Ex. 110, Hensel Dec. ¶ 4; Pl.'s Ex. 111, M. Brown Dec. ¶ 4; Pl.'s Ex. 113, Hullinger Dec. ¶¶ 3, 8; Pl.'s Ex. 117, Martin Dec. ¶ 6; Pl.'s Ex. 118, F. Brown Dec. ¶ 2; Pl.'s Ex. 124, Peart Dec. ¶ 4; Pl.'s Ex. 126, Galvin Dec. ¶ 3; Pl.'s Ex. 139, Webb Dec. ¶ 9.

[5] Pl.'s Ex. 18, Gray Dec. ¶ 7; Pl.'s Ex. 19, Hinson Dec. ¶ 8; Pl.'s Ex. 112, Strom Dec. ¶¶ 4, 7; Pl.'s Ex. 114, Dunn Dec. ¶ 4; Pl.'s Ex. 115, Waddell Dec. ¶ 3; Pl.'s Ex. 116, Blumberg Dec. ¶ 4; Pl.'s Ex. 118, F. Brown Dec. ¶ 2; Pl.'s Ex. 119, Hubbard Dec. ¶¶ 4-5; Pl.'s Ex. 120, Taylor Dec. ¶ 4; Pl.'s Ex. 121, L. Brown Dec. ¶ 4; Pl.'s Ex. 122, Bower Dec. ¶ 4; Pl.'s Ex. 123, C. Wilson Dec. ¶ 4; Pl.'s Ex. 125, Jolly Dec. ¶ 4; Pl.'s Ex. 128, Yancik Dec. ¶ 4; Pl.'s Ex. 129, Morris Dec. ¶ 3; Pl.'s Ex. 130, Meade Dec. ¶ 4; Pl.'s Ex. 131, Hampton Dec. ¶ 4; Pl.'s Ex. 132, Allen Dec. ¶ 5; Pl.'s Ex. 133, Miller Dec. ¶ 3; Pl.'s Ex. 134, Nannie Dec. ¶ 4; Pl.'s Ex. 135, Hattox Dec. ¶ 2; Pl.'s Ex. 136, Roepers Dec. ¶ 4; Pl.'s Ex. 139, Webb Dec. ¶ 10.

[6] Pl.'s Ex. 113, Hullinger Dec. ¶¶ 3, 7.

4

specified time frame,[7] that VPS would provide a refund if requested within seven days,[8] and that VPS would host an open house for the timeshare.[9] According to VPS' former employees, these misleading representations were made to induce consumers to purchase VPS' services or to "save" a sale.[10] *See RCA Credit Servs.*, 727 F. Supp. 2d at 1329 ("Express claims, or deliberately made implied claims, used to induce the purchase of a particular product or service are presumed to be material."). And, as evidenced by the declarations, these representations were material to the consumers' decisions to enter into the agreements with VPS.

Wilson does not dispute that VPS' telemarketers made the statements identified above or that these statements were likely to mislead customers. He simply suggests that the representations were not material because any misunderstanding was cured by a subsequent verification process. The undisputed evidence, however, shows that the verification process failed to dispel the confusion created by VPS' misleading representations. Telemarketers informed consumers that the sale would not occur if they disagreed with the verification process and that they should not worry if the verifier's statements contradicted the telemarketer's promises.[11] Consumers who disagreed with the verification process or had further questions were transferred back to the telemarketer who would then attempt to "save" the sale.[12] Notwithstanding the verification process, the calls by VPS continued to create the overall impression that the telemarketers' false and misleading representations were true. *See USA Fin.*, 415 F. App'x at 973. Therefore, VPS is liable under Section

---

[7] Pl.'s Ex. 115, Waddell Dec. ¶ 3; Pl.'s Ex. 120, Taylor Dec. ¶ 5; Pl.'s Ex. 121, L. Brown Dec. ¶ 4.

[8] Pl.'s Ex. 112, Strom Dec. ¶¶ 6-9.

[9] Pl.'s Ex. 139, Webb Dec. ¶¶ 7-8; Pl.'s Ex. 150, Murray Dep. 87-88.

[10] Pl.'s Ex. 139, Webb Dec. ¶¶ 6-11; Pl.'s Ex. 150, Murray Dep. at 84-88.

[11] Pl.'s Ex. 16, Gardner Dec. ¶¶ 13-14; Pl.'s Ex. 150, Murray Dep. at 70.

[12] Pl.'s Ex. 151, S. Wilson Dep. at 42.

5 of the FTCA.

In Count II, the FTC alleges violations of Part 310.3(a) of the TSR, which provides that "[m]isrepresenting, directly or by implication, in the sale of goods or services . . . [a]ny material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies," and "making a false or misleading statement to induce any person to pay for goods or services" constitute deceptive telemarketing acts or practices and violations of the TSR. 16 C.F.R. §§ 310.3(a)(2)(iv), 310.3(a)(4). For the reasons discussed, VPS is liable for violations of 16 C.F.R. §§ 310.3(a)(2)(iv) and 310.3(a)(4).

In Count III, the FTC alleges that VPS initiated outbound telephone calls to numbers on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B). The FTC submitted numerous declarations from consumers who averred that VPS contacted them, notwithstanding that their names appeared on the Registry.[13] Wilson has not offered any specific evidence to refute these declarations. Nor has he raised a fact issue by suggesting that the consumer declarants (1) may have been prior VPS customers, (2) may have appeared on a backlog list of persons who had previously requested information from VPS, or (3) may have provided their information to a leads broker. The consumers specifically averred that they had no prior relationship with VPS and had not requested information from VPS.[14] VPS is therefore liable for violations of 16 C.F.R. § 310.4(b)(1)(iii)(B).[15]

In Count IV, the FTC alleges that VPS made telemarketing calls without paying the required

---

[13] Pl.'s Ex. 7, Skiba Dec. ¶¶ 4-5; Pl.'s Ex. 16, Gardner Dec. ¶¶ 4-5; Pl.'s Ex. 18, Gray Dec. ¶¶ 4-5; Pl.'s Ex. 19, Hinson Dec. ¶¶ 4-5; Pl.'s Ex. 111, M. Brown Dec. ¶¶ 6-7; Pl.'s Ex. 113, Hullinger Dec. ¶¶ 4-5; Pl.'s Ex. 115, Waddell Dec. ¶¶ 4-5; Pl.'s Ex. 120, Taylor Dec. ¶¶ 9-10; Pl.'s Ex. 125, Jolly Dec. ¶¶ 8-9; Pl.'s Ex. 126, Galvin Dec. ¶¶ 4-5; Pl.'s Ex. 129, Morris Dec. ¶¶ 6-7; Pl.'s Ex. 131, Hampton Dec. ¶¶ 6-7; Pl.'s Ex. 133, Miller Dec. ¶¶ 6-7; Pl.'s Ex. 135, Hattox Dec. ¶¶ 6-7.

[14] *See id.*

[15] The FTC's evidence of the total number of calls VPS made to persons on the Do Not Call Registry is unpersuasive because this evidence fails to exclude persons who had a prior business relationship with VPS.

fee to access the National Do Not Call Registry, in violation of the TSR, 16 C.F.R. § 310.8. The FTC submitted evidence showing that VPS never paid the fee. Wilson does not dispute VPS' failure to pay the fee. He simply avers that VPS purchased lists of telephone numbers from brokers, but he "did not think [he] needed to scrub any of the leads against the Do Not Call List" because the brokers assured him that none of the numbers appeared on the Registry. (Dkt. 130-1, Wilson Aff. ¶ 46).

Under the TSR, a violation occurs whenever a telemarketer contacts <u>any</u> person in a given area code without paying the fee to access the part of the Do Not Call Registry containing the telephone numbers in that area code. 16 C.F.R. § 310.8(a). The plain language of the Rule applies regardless of whether the seller believes that a telephone number does not appear on the Registry. The Rule's sole exception is limited to sellers who only make calls to persons who have consented in writing or to persons with whom they have an established business relationship. *Id.* There is no contention that VPS called any persons who had previously consented in writing. And the leads VPS purchased from brokers had no prior relationship with VPS, as Wilson averred that each lead simply contained "a person who wanted to either sell or purchase a timeshare." (Wilson Aff. ¶ 45). Several consumers confirmed this point by averring that VPS called them, notwithstanding that their names appeared on the Registry and they had no prior relationship with VPS, as discussed. VPS is therefore liable under 16 C.F.R. § 310.8.

### Individual liability of Wilson

"Once the FTC has established corporate liability, 'the FTC must show that the individual defendants participated directly in the practices or acts or had authority to control them.'" *F.T.C. v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996) (quoting *Amy Travel Serv.*, 875 F.2d at 573). "The FTC must then demonstrate that the individual had some knowledge of the practices." *Id.* The "knowledge requirement may be fulfilled by showing that the individual had actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations,

7

or an awareness of a high probability of fraud along with an intentional avoidance of the truth." *Amy Travel Serv.*, 875 F.2d at 574 (quotation omitted).

On this record, the FTC has not conclusively shown Wilson's knowledge of, and failure to control, the telemarketers' misrepresentations. Wilson averred that employees were required to follow a script, and he randomly monitored calls to ensure their compliance. (Wilson Aff. ¶¶ 15-16). Any telemarketer who made inappropriate statements, including false or misleading representations regarding the presence of a buyer or the time in which a sale would occur, would be immediately reprimanded or fired. (*Id.* ¶¶ 18-19; Wilson Dep. 146-47, 195, 207, 211). A former employee confirmed this, testifying that "it was always a big no-no to ever say we had a buyer." (Pl.'s Ex. 150, Murray Dep. at 59). Because there are genuine issues of material fact as to Wilson's knowledge and control over the telemarketers' representations, summary judgment is improper.

Likewise, there are disputed facts regarding Wilson's knowledge of VPS' calls to persons on the Do Not Call Registry. Wilson avers that VPS purchased lists of telephone numbers from lead brokers who assured that none of the leads appeared on the Registry. While VPS also called numbers from a "backlog," the persons on that list had a prior relationship with VPS or had requested information from VPS. And the FTC has not shown that Wilson had knowledge that calls were made to persons on the backlog outside the period of time set forth in 16 C.F.R. § 310.2(o).

On the other hand, the undisputed evidence shows that Wilson is liable for VPS' failure to pay the annual fee to access the Do Not Call Registry. Wilson clearly had authority to control VPS' payment of the fee. And there is no contention that he was unaware that VPS failed to pay the fee. To the contrary, Wilson avers that he "did not think [he] needed to scrub any of the leads against the Do Not Call List." (Wilson Aff. ¶ 46). Even taken in the light most favorable to Wilson, this evidence shows that Wilson knew the fee had not been paid or, at a minimum was recklessly indifferent. Wilson is individually liable for VPS' violations of 16 C.F.R. § 310.8.

## Common enterprise

The FTC further argues that Wilson should be individually liable for the FTCA and TSR violations of TE and HLM. "[W]here the public interest is involved, as it is in the enforcement of Section 5 of the Federal Trade Commission Act, a strict adherence to common law principles is not required ... where strict adherence would enable the corporate device to be used to circumvent the policy of the statute." *P.F. Collier & Son Corp. v. FTC*, 427 F.2d 261, 267 (6th Cir. 1970). Therefore, "[w]hen corporations act as a common enterprise, each may be held liable for the deceptive acts and practices of the other." *F.T.C. v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1182 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir. 2009). The existence of a common enterprise is determined by considering numerous factors, including "common control; the sharing of office space and officers; whether business is transacted through a maze of interrelated companies; the commingling of corporate funds and failure to maintain separation of companies; unified advertising; and evidence that reveals that no real distinction exists between the corporate defendants." *Id.*

Many of these factors are absent or cannot be determined on summary judgment. There is a factual dispute as to whether VPS owned and exercised control over TE and HLM. The entities did not share office space, and the only overlapping officer appears to have been Perry, not Wilson. There is no evidence that business was transacted through a maze of interrelated companies, as each company appears to have dealt independently with its own customers. And the record does not establish that the entities commingled corporate funds. At most, HLM made periodic payments to VPS for the use of its name. While certain merchants averred that the entities used the same tax identification number, a federal income tax return that the FTC attached to as an exhibit provides a different tax identification number for HLM. On this record, the FTC has not conclusively shown that VPS operated as a common enterprise with TE or HLM. And more fundamentally, the FTC has

not conclusively shown that Wilson had authority to control TE or HLM which, as discussed, is the touchstone for holding him individually liable for the violations of those corporations.

## Conclusion

Accordingly, the motion for default judgment (Dkt. 122) and the motion for summary judgment (Dkt. 114) are GRANTED *in part*.

(1) Defendant Vacation Property Services, Inc. is liable for violations of 15 U.S.C. § 45(a) (Count I), 16 C.F.R. §§ 310.3(a)(2)(iv) and 310.3(a)(4) (Count II), 16 C.F.R. § 310.4(b)(1)(iii)(B) (Count III), and 16 C.F.R. § 310.8 (Count IV).[16]

(2) Pursuant to Fed. R. Civ. P. 56(g), these violations are established as facts for purposes of trial.

(3) Defendant Albert Wilson is individually liable for Vacation Property Services, Inc.'s violation of 16 C.F.R. § 310.8 (Count IV).

(4) The motions are denied in all other respects.

**DONE AND ORDERED** this 21st day of May, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of record
Unrepresented parties

---

[16] Determination of the amount of the judgment against VPS must await the jury's finding on whether Defendants operated as a common enterprise.